CASE 90—PETITION EQUITY—MAY 10.

## Hill, &c., v. Cornwall & Bro.'s Assignee.

## Merchants National Bank v. Same.

## Bank of Louisville v. Same.

## Farmers & Drovers Bank v. Hill, &c.

APPEALS FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. PARTNERSHIP REAL ESTATE—DOWER.— Where a firm, consisting of father and sons, purchased a building for partnership purposes, paying for it with capital furnished by the father, and with the father's consent an interest in the property was conveyed to each of the sons by separate deed, the property, although thus conveyed, is to be regarded as partnership property and treated as personalty for the payment of partnership debts; and therefore the wives of the partners are not entitled to dower as against the claims of partnership creditors.

2. DEEDS — RESERVATION OF POWER TO REVOKE — ASSIGNMENT FOR CREDITORS. —Where a father conveyed real estate to another in trust for his daughter, reserving "full power to revoke each or any or some or all of the uses hereby created and to cause them to shift to other person or persons, including himself," the title passed to the grantee, subject to the power reserved by the grantor to change the use; and the grantor having made a general assignment for the benefit of his creditors without revoking the grant or changing the use, the right to do so did not pass to the assignee. Such a power of revocation is not an interest in the property that can be subjected by the grantor's creditors.

3. RENT.—Although the property in which an interest was thus conveyed to the daughter was used by the father and his sons in their partnership business, the daughter, having failed for several years to assert any claim for rent, ought not, after the firm has made an assignment for the benefit of creditors, be heard to assert such a claim, it being manifest from the payments made by the father for both the daughter and her husband that no claim for rent was intended to be asserted.

4. HUSBAND AND WIFE—SEPARATE ESTATE.—Money obtained by the firm, after it became involved, from the wife of one of the sons through her husband, and always recognized by the firm as the wife's money, and for the greater part of which a note was executed by the firm to the wife, must be regarded as the wife's separate estate, the husband being a member of the firm by which the note was executed; and the father, for the purpose of securing the son's wife and paying

other debts of the firm; having sold and conveyed his individual property to the husband, reciting as a part of the consideration the debt due the wife, the property thus conveyed must be regarded as held in trust by the husband for the wife to the extent of the debt due her; and in this action for the settlement of the husband's estate under an assignment for the benefit of his creditors, the wife is entitled, out of the proceeds of the property, to the amount of the debt due her.

5. WHERE THERE IS AN ASSIGNMENT OF PARTNERSHIP PROPERTY FOR THE BENEFIT OF CREDITORS, AND A SEPARATE ASSIGNMENT BY EACH PARTNER OF HIS INDIVIDUAL PROPERTY, the rule of distribution as between partnership creditors and individual creditors is the same that it is where there is a joint assignment of partnership assets and individual assets, and if the partnership creditors elect to avail themselves of the equitable rule which gives them priority over the individual creditors as to firm assets, they can not share in the individual assets until the individual creditors have been made equal with them.

6. USURY.—In any case where it is plain from the record that a party is seeking to recover usury, the chancellor should refuse to give judgment for the usury, although the plea is not made by the defendant.

7. SAME.—Where a note is renewed, although the renewal is signed by others than those originally bound, all usury will be purged from the transaction so long as the original obligor remains liable. And a payment made at the time of the renewal, although made as a payment of usury, will be treated as a payment on the principal.

8. ASSIGNMENT FOR CREDITORS.—The assignee, acting upon his own judgment and also upon the advice of a large number of creditors, having continued the operation of the assigned factory in order to work up the material on hand, and also to preserve the business, can not be held liable for any loss sustained, all parties having acted in the best of faith and with a view to advance the interest of creditors.

9. SAME.—Where there is an assignment for the benefit of creditors the chancellor has no power, at the instance of a creditor, to decree the sale of property owned jointly by the debtor with another as provided by section 490 of the Civil Code. The legal title being in the assignee, he alone can sue.

10. ATTORNEY'S FEE.—As there was a continuous service by counsel for two years, with questions arising of the greatest importance to the assignee and the creditors, and the assets were of the value of $200,000, the fee of $8,000 allowed to counsel was not unreasonable and is fully sustained by the testimony.

DAVID W. FARLEIGH FOR SALLY W. HILL AND OTHERS, APPELLANTS IN FIRST APPEAL, AND APPELLEES IN OTHER APPEALS.

1. By the deed from Wm. Cornwall to his sons, as trustees for his daughter, the title passed completely, subject only to be divested by the

exercise of the reserved power of revocation. (Jones v. Clifton, 101 U. S., 229.)

Bland v. Bland, 90 Ky., 400; Dumesnil v. Dumesnil, 92 Ky., 526, explained.

2. The power of revocation did not pass to the assignee. (18 Am. and Eng. Ency. of Law, 881; Jones v. Clifton, 101 U. S., 229.)

3. There was never any execution of the power by the grantor. (Blagge v. Miles, 1 Story, 426.)

4. So long as the title remained in the daugther unrevoked, she was entitled to the rent.

5. The wives of Wm. Cornwall, Jr., and A. W. Cornwall, are entitled to dower. None of the property was regarded by the partners as firm property, nor had they any intention of making it firm property, but, upon the contrary, they treated it in every way as the property of the individuals. (Flanagan v. Shuck, 82 Ky., 617; Carter v. Flexner, 92 Ky., 400.)

Cornwall v. Cornwall, 6 Bush, 369, is overruled by Carter v. Flexner.

5. The claim of Mrs. Eleanor Cornwall for money loaned by her to the firm of Cornwall & Brother, presents an equity pure and untainted with any manner of suspicion, and the evidence meets every possible technical objection to the claim. (Maraman v. Maraman's Adm'r, 4 Met., 89; Denning v. Williams, 26 Conn., 226; Huber v. Huber, 10 Ohio, 371; Wood v. Warden, 20 Ohio, 518; Gaines' Adm'r v. Poor, 3 Met., 503; Ward v. Crotty, 4 Met., 59; Latimer, &c., v. Glenn, 2 Bush, 535.)

The facts created a resulting trust. Section 19 of art. 1, chap. 63, Gen. Stats., by its own terms does not apply. (Pomeroy's Eq. Jur. (2d ed), sec. 420; Lounsbury v. Purdy, 18 N. Y., 517; Aynesworth, &c., v. Haldeman, &c., 2 Duv., 566; Faris and wife v. Dunn, &c., 7 Bush, 278.)

An assignee for creditors stands precisely in the shoes of his assignor, and any equity may be asserted against him that could be asserted against the assignor. (Bridgeford, &c., v. Barbour, 80 Ky., 534.)

7. The court has no jurisdiction to order a sale of property owned jointly by two or more persons, except in a suit brought by one of the joint owners. (1 Cooley's Blackstone, 193; Civil Code, sec. 490.)

Here the property was owned by the assignee and Mrs. Hill. It could not be sold except at the suit of the assignee. The assignee did not sue for the purpose, therefore the court had no jurisdiction to order the sale.

8. Mrs. Hill, as a creditor, had the right to make the plea of usury. (Lee, &c., v. Fellows, &c., 10 B. M., 118.)

Besides, the usury being apparent on the face of the record, it was the duty of the chancellor, without a plea, to strike it from the claims containing it. (Lucking's Adm'r, v. Gegg, 12 Bush, 300.)

VOL. 95.] JANUARY TERM, 1894. 515

Hill, &c., v. Cornwall & Bro.'s Assignee, &c.

R. W. WOOLLEY AND FAIRLEIGH & STRAUS, OF COUNSEL ON SAME SIDE.

HELM & BRUCE, FOR BANK OF LOUISVILLE.

1. Where property has been bought with partnership funds, for partnership purposes, and devoted to partnership purposes, the holder of the legal title will, *in equity*, be regarded as a trustee for the firm and its creditors. (Galbraith v. Gedge, 16 B. M., 631; Cornwall v. Cornwall, 6 Bush, 369; Bank of Louisville v. Hall & Long, 8 Bush, 672; Parsons on Partnership, p. 363; Spaulding v. Wilson & Muir, 80 Ky., 590; Devine & Michum, 4 B. M.; Lowe & Lowe, 13 Bush; Flanagan v. Shuck, 82 Ky., 617; Carter v. Flexner, 92 Ky., 400.)

2. Although Wm. Cornwall may not have actually conveyed the interest claimed by Mrs. Hill through the instrumentality of the power of appointment reserved in the deed to her, yet, as he has in the most unequivocal way asserted the right to use and dispose of it as he chooses, the chancellor should subject it to the payment of his debts. A conveyance is not the only means of asserting ownership or dominion. (Johnson v. Cushing, 15 N. H., 694; Tobin v. Dixon and wife, 2 Met., 422.)

3. The interest claimed by Mrs. Hill is held in trust by her brothers for the benefit of Wm. Cornwall, the grantor, he having the power to do with it as he chooses, and it is therefore subject to his debts under section 21 of chapter 63 of the General Statutes. (Bland v. Bland, 90 Ky., 400; Bull v. Kentucky National Bank, *Idem*, 452; Dumesnil v. Dumesnil, 92 Ky.)

4. Wm. Cornwall has executed in favor of his creditors the power reserved in the deed to Mrs. Hill, and has conveyed the property to his assignee.

To constitute the execution of a power of appointment, it is not necessary that the instrument by which it is executed should refer to the power. (Terry v. Rodahan, 79 Ga., 278; s. c., 11 Am. St. Rep., 420; Warner v. Connecticut Mut. Life Ins. Co., 109 U. S., 365.)

5. Mrs. Eleanor Cornwall has not made out a case of separate estate, nor has she shown a loan by her to Cornwall & Brother.

While a husband may permit his wife to set apart the proceeds of her general estate to her own separate and exclusive use, yet his intention to do so must be manifested by a distinct act, unequivocal in its nature and inconsistent with the idea that he reserves the right in any possible contingency to assert his claim to such estate. (Penn v. Young, 10 Bush, 628.)

6. Admitting, for the sake of argument, that Mrs. Cornwall did lend this money out of her separate estate to the firm of Cornwall & Brother, yet there is no proof in this record that she has ever surrendered her claim against the firm, or accepted the conveyance from William Cornwall to her husband as satisfaction thereof, unless such acceptance was made after the assignment, when it could not have been done.

7. The chancellor properly refused to allow the Merchants National Bank to make proof of its debt against Cornwall & Brother, and also against Wm. Cornwall. If the creditor takes the benefit of the preference which equity gives him as to the partnership assets, he must consent to let the individual creditors be made equal out of the individual assets; and this is true whether the partnership name is signed with, or without, the addition of the individual name, and whether the partnership name is signed first or the individual name first. (Northern Bank of Kentucky v. Keizer, 2 Duv., 169; Fayette National Bank v. Kenny, 79 Ky., 133.)

8. While the court would not give a judgment for any usury *contained in* the paper sued on, yet usury that has heretofore *been paid* can not be construed as a payment on the principal, but merely gives to *the debtor* a cause of action which he, by his personal election, might assert in the nature of a set-off or counter-claim, but which he has not done, and which, therefore, the court can not consider; and this position is made doubly strong if the court holds, as the lower court did, that Mrs. Hill, the only party charging usury, is not even a creditor. (Hart v. Hayden, 79 Ky., 346; Smith v. Young, 11 Bush, 393; Estelle v. Rodes, 1 B. M., 314.)

9. If it was proper to eliminate usury the court erred as to Merchants National Bank debt in not eliminating the interest charged on the last renewal. (Sydner v. Mt. Sterling National Bank, 15 Ky. Law Rep., 4.)

10. The assignee should be charged with the loss of $11,114.16 by the operation of the factory.

11. The judgment allowing assignee's and attorneys' fees should be reversed for excessiveness.

12. The chancellor had jurisdiction to order a sale of the property upon the petition of creditors, the real parties in interest. (Civil Code, secs. 428, 438, 490.)

MUIR, HEYMAN & MUIR FOR LOUISVILLE TRUST COMPANY, ASSIGNEE.

1. The assignee is not liable for the alleged loss incurred in the operation of the factory business.

An assignee for the benefit of creditors has power to work up material ready for manufacture, and to purchase new material where necessary to work up the old, if, in the judgment of the assignee, it will benefit the assigned estate. (Burrill on Assignments, sec. 396; Woodward v. Marshall, 22 Pick., 468.)

Where the creditors have authorized it, an assignee may carry on the business and purchase new stock from time to time, although not necessary to work up the material on hand. (Mussy v. Noyes, 26 Vt., 462.)

2. The commissioner allowed the Trust Company, and the chancellor approved his finding, the usual commission of five per cent upon the

amounts received and disbursed by it as assignee of Wm. Cornwall, Sr., and Wm. Cornwall, Jr., and as the sums which passed through its hands as assignee of Cornwall & Brother were sometimes necessarily the same money handled and rehandled by it in the course of carry- ing on the factory business, he allowed the assignee as commissions from the estate of Cornwall & Brother only a lump sum of $2,500, instead of five per cent commission, which, in the case of Cornwall & Brother, would have amounted to more than $3,500. This was not excessive.

3. The fees allowed counsel are reasonable, just and fairly based upon the importance, amount and value of the great interests involved.

HUMPHREY & DAVIE and BLAINE & KINKEAD for MER-CHANTS NATIONAL BANK.

1. As to usury. Where a note containing usury has been assigned, and the maker pays the note to the assignee, or executes to him a new note, a cause of action for the usury arises at once, by the maker of the note against the original payee. (Stone v. McConnell, 1 Duvall, 56; Breckinridge v. Churchill, 3 J. J. Mar., 12.)

2. The only law to be applied to the subject of usury where a national bank is involved, is the National Bank Act. (Brown v. Marion National Bank, 13 Ky. Law. Rep., 812; s. c., 92 Ky., 608; Sydner v. Mt. Sterling National Bank, 15 Ky. Law. Rep., 4.)

3. The plea of usury must, therefore, comform to the National Bank Act, and must contain the allegation that the reserving or charging the rate of interest greater than is allowed by law has been "knowingly done." (Henderson National Bank v. Alves, 12 Ky. Law Rep., 724; s. c., 91 Ky., 142; Schuyler's New York Bank v. Bollong, 24 Neb., 825; s. c., 40 N. W. Rep., 413.)

4. Where there has been a series of notes renewed from time to time and usury charged on each note, if the discount is paid, then it can not be considered as an offset to the note. If the discount is added in to the face of the note, then the note sued on can be abated by all usury contained in it. (Driesbach v. National Bank, 104 U. S., 52; Barnett v. National Bank, 98 U. S., 555; Brown v. Marion National Bank, 13 Ky. Law Rep., 812; s. c., 92 Ky., 608; Sydner v. Mt. Sterling National Bank, 15 Ky. Law Rep., 4; Farmers & Mechanics Bank of Missouri v. Hoagland, 7 F. R., 159.)

5. The Merchants National Bank had the right to prove its debt against the private estate of William Cornwall, and against the partnership estate of William Cornwall & Brother. This rule is settled, where both the firm and an individual make an assignment. (National Bank v. Bank of Commerce, 94 Ill., 271.) The modern English rule allows double proof. The American rule has always allowed double proof. (17 A. & E. E. L., 1210; Ex parte Nason, 70 Me., 366; Borden v. Cuyler, 10 Cush., 477; Emory v. Canal National Bank, 3 Clifford,

507; s. c., 7 N. B. R., 219; *In re* Thomas, 17 N. B. R., 63; *In re* Foote. 12 N. B. R., 337; s. c., 8 Ben. U. S., 228; Meade v. National Bank, 2 N. B. R., 173; s. c., 6 Blatch. U. S., 180; *In re* Bigelow, 2 N. B. R., 371; s. c., 3 Ben. U. S., 146; Claflin v. Tompkins, 89 Ala., 503; s. c., 8 S. R., 45.) The case of Fayette National Pank v. Kenny, 79 Ky., 185, is not in point, because there the debt was shown to be a partnership one, with the partner simply as surety.

6. The one-third interest in the factory property, claimed by Mrs. Hill, should have been subjected to the debts of William Cornwall and Cornwall & Brother. In Kentucky one can not reserve to himself the absolute disposition of property and yet prevent it from being subjected to his debts. (Bland's Adm'r v. Bland, 90 Ky., 400; Bull v. Kentucky National Bank, 90 Ky., 453; Dumesnil v. Dumesnil, 18 S. W., 229; s. c., 92 Ky., 527.) The cases of Jones, Assignee, v. Clifton, 101 U. S., 225, and Nichols v. Eaton, 91 U. S., 716, are not binding, being constructions of the Bankrupt Law, and not of our statute.

7. William Cornwall, Sr., has exercised his power of appointment. A deed will be considered as an execution of a power, even though the power may not be referred to, if it would not be otherwise effectual. (Terry v. Roderhan, 79 Ga , 278; s. c., 11 A. S. R., 420; Grindat v. Montgomery Gas Light Company, 82 Ala., 596; s. c., 60 A. R., 769; South v. South, 91 Ind., 221 ; s. c., 46 A. R., 592; Funk v. Eggleston, 92 Ill., 546; Warner v. Connecticut Mutual Life Insurance Co., 109 U. S., 365.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the month of March, 1891, Cornwall & Brother made an assignment for the benefit of creditors, and each member of the firm also made an individual assignment for the same purpose. The firm was composed of William Cornwall and his two sons, Wm. Cornwall, Jr., and Aaron W. Cornwall. The business of the firm was the manufacture of soap and candles, and being largely indebted individually, as well as partners, many questions have arisen touching the character of the assets and the mode of payment or distribution of the trust fund between creditors. The Louisville Trust Company was made the assignee, and filed this petition below, asking advice as to the administration of the several trusts, and for a final settlement of its accounts as assignee.

They owned real estate consisting of the soap factory proper, and the warehouse adjoining, that was used in the business.   It is claimed by the firm's creditors that this realty was partnership property, purchased and used for that purpose, and therefore to be treated as personalty and liable for the partnership debts, and, on the other hand, it is claimed to be realty, and a claim to a potential right of dower asserted by the wives of William Cornwall, Jr., and Aaron Cornwall.

It is further claimed that Mrs. Hill, a daughter of William Cornwall, Sr., and sister of the other two members of the firm, is the owner of an undivided one-third interest in the *factory property*, under a conveyance from her father, made and recorded long prior to the assignment, and that the firm is indebted to her for the rent of this one-third interest for many years, and this rent Mrs. Hill seeks to recover.   The manner in which this property was held, and the interest of the several claimants in it, will be considered before determining the remaining questions presented.   If the factory and warehouse building belonged to the firm, then the wives of William and Aaron Cornwall have no claim to dower, as the entire property is insufficient to pay the partnership debts.

The elder Cornwall had been engaged in the same business with his brother, John Cornwall, for many years, when John Cornwall died, and the partnership ended. The factory property was then sold by a decree of the Louisville Chancery Court, and William Cornwall, Sr., through his son, William, purchased the factory, and in March, 1870, a commissioner's deed was made to William Cornwall, Jr., for the entire factory.   The father, William Cornwall, Sr., owned at the time of the sale one-half of

the factory, and therefore had to pay only one-half of the proceeds of sale, or the purchase money. In a few days after the sale, his son, Wm. Cornwall, Jr., conveyed to his father two-thirds of this factory, retaining the title to the one-third by gift from his father. The sons had no estate, or, at least, the entire capital for conducting the firm was furnished by their father. The business was continued under the old firm name of Cornwall & Brother, but it is manifest that the factory was purchased for partnership purposes, and, although paid for by the capital furnished by the father, the payment was out of partnership funds, and the property used for partnership purposes. While it is true Aaron Cornwall did not arrive at age until 1874, three years after the purchase at the decretal sale, when he did arrive at maturity his father conveyed to him an interest of one-third in the factory, and in the year 1875, he conveyed the remaining third interest in the factory to his two sons, in trust for his daughter Sally, now Mrs. Hill. So it appears that Wm. Cornwall, Sr., had divested himself of the legal title to this property, or of his interest in it as purchaser, under the decree to his three children. That Mrs. Hill was not a partner is evident, as she seems to have had no connection with the factory or its manufactures, her two brothers holding the title for her, and in fact she had been receiving rent for this one-third interest.

While William Cornwall, Sr., had divested himself of the legal title to the factory building, he had furnished all the capital with which to run it, and was certainly interested as a partner, and when looking to the character of the partnership, and the conveyances from the father to his two sons to enable them to have capital, as

well as himself, in the enterprise, it can not well be argued
that the senior Cornwall had no equitable right to have
the entire property applied to the payment of the part-
nership debts. In their days of prosperity they might
well have said, as they now state, that this realty was not
considered or treated by the firm as partnership property.
Yet the firm books demonstrate that this one-third in-
terest conveyed to each son constituted his capital invested
in the enterprise, and that such must be the result of the
acts and conduct of all the parties.

Wm. Cornwall states that this property was purchased
for the purpose of being operated by the firm, and not
only so, but that it had been so operated since that date,
Wm. Cornwall, Jr., being then the only partner. The
senior Cornwall, as the books of the firm show, put [into
the concern at the beginning a large sum of money. There
was no one else to furnish the capital.

The factory sold at decretal sale for $44,500, and on the
books of the firm the senior Cornwall is credited by his
half interest, which is $22,250. There is an account on
the books styled the "building, land and machinery ac-
count," and from it can be seen what was paid by the firm
for the buildings, land and machinery, and the entries on
the books show that the money due on the purchase of this
factory was paid out of the firm money, and this firm
money was the cash paid into the firm by Cornwall, Sr.,
and for which he was credited on his individual account,
and went to pay what the firm owed for the one-half
interest owned by John Cornwall, who was a member of
the old firm.

The *building and machinery* account is charged with the
one-half interest of Wm. Cornwall, Sr., and he is credited

by it.   Wm. Cornwall, Jr., is credited on the books with
the value of his one-third interest that had been conveyed
him by his father, and his father is charged with the
amount, transferring or giving to his son in this way that
much of his, *the father's*, capital.   Like entries were made
when Aaron Cornwall was given his one-third interest,
Aaron being credited and his father charged with the
amount.

The value of the third of the property conveyed to Mrs.
Hill was credited to the *building*, land and machinery ac-
count, and this was proper, as that account had been
charged with the entire cost.   It must be assumed that all
the partners consented to this conveyance to Mrs. Hill,
leaving two-thirds of the building as property liable for
partnership debts, and, in fact, partnership property.   The
factory and warehouse were both assigned by these part-
ners as partnership assets, and the property or its value is
found on the balance sheets of the firm's business down
to the date of the assignment.

The warehouse property was paid for by the firm—it
was bought for firm purposes and used as such.   We have
but little doubt on this question, and while the property
held under these separate deeds would be treated as realty
after paying partnership liabilities, it must be regarded as
partnership property; and was properly subjected to the
payment of partnership debts.

The fact that separate conveyances were made to the
sons by the father can not make it individual estate, be-
cause it was used and treated as a part of the partnership.
If each of the three partners had owned a one-third
interest before forming the partnership, and had agreed
to erect a factory on the land and to credit each by the

value of his interest on the firm books as capital furnished, could there be any reason for holding the property not primarily liable for partnership debts? We can perceive none, and while the wife of each would be entitled in such a case to dower, as the title was held before the partnership was created in this case, the factory was purchased for partnership purposes, paid for out of the partnership funds, and used for partnership purposes. In Spalding, &c., v. Wilson & Muir, reported in 80 Ky., 589, where the conveyance was made to the two partners jointly, it was held that this made no difference. *The property was purchased for partnership purposes and appropriated to those purposes and paid for by partnership funds.* It therefore becomes partnership property.

In Carter v. Flexner, 92 Ky., 400, this court, in the endeavor to reconcile the conflicting decisions and views of judges in regard to what has been often termed the *intention of the parties,* said, *that where partners own real estate as partners it can not be treated or considered as personalty except for the purposes of the partnership, and then as assets for the payment of the firm debts.* Facts must exist showing that real estate is partnership property before it can be treated as personalty for partnership use and the payment of partnership debts. The partners having the legal title to land in a court of law the property must be regarded as realty, but when going into a court of equity, if partnership property, it must be used for the partnership purposes, and we are to determine from the facts before us whether the realty was purchased with the funds of the partners and for partnership purposes and so used. If so, it becomes trust property for all the purposes of the partnership and the payment of the partnership liabilities. After the partner-

ship ceases and the debts are paid, we must, if any realty is left, determine the mode of descent or inheritance by the conveyance itself, without reference to its having been once used as partnership property. The chancellor below was correct in his conclusion when holding that no potential right of dower existed.

The creditors, who are the appellants as to the point now raised, insist that Mrs. Hill, the daughter of Wm. Cornwall, Sr., has no interest in this *factory property* free from the claims of creditors, by reason of the conveyance under which she holds. On the 7th of January, 1875, her father executed to her two brothers, Wm. Cornwall, Jr., and Aaron Cornwall, a conveyance of an undivided one-third interest in the factory, in trust for the sole and separate use of Sallie W. Cornwall (now Hill), with this proviso: "That the party of the first part hereby reserves to himself full and all species of power to revoke each or any, or some or all, of the uses hereby created, and to cause them to shift to other person or persons, including himself, as he may choose, or to cause new uses to spring to the use of some other persons or person, including himself."

The contention is that such a conveyance would not, in equity, divest the grantor of title as against creditors; that our statute makes trust property liable for the debts of the *cestui que trust*, and this was a holding in trust for the grantor; and lastly, the grantor has executed the power of appointment for the benefit of creditors in the assignment made to the Louisville Trust Company. The conveyance to the daughter, Mrs. Hill, was made at a time when the grantor (her father) was in a prosperous condition and with ample means to make such a transfer

to his daughter with a view to providing for her future wants, and no complaint is made as to any improper motive on the part of the grantor in executing the conveyance, and if made, these creditors were in no wise affected by it, and, besides, it was executed from the purest and best of motives. It was executed nearly fifteen years before his financial troubles, and the grantor was endeavoring to provide for his daughter as he had for his two sons, to whom he had given or conveyed a similar interest.

It is contended that the reservation of power, with the right of appointment, destroyed the conveyance by the grantor to his daughter, and left him, so far as creditors are concerned, as if no conveyance had been made. There can be no doubt but that the title passed from the grantor to the grantee (his daughter) at the date of the conveyance, and if not made for a fraudulent purpose we perceive no reason why the father could not make such a settlement upon his daughter when not affecting the rights of others. She did not hold the property in trust for her father, but the title was in her, subject to the power reserved in the deed, on the part of the grantor, to change the use to, or for the benefit of another. This conveyance was of record; it affected none of these creditors; it was not prohibited by law, and therefore must be regarded as a valid instrument unless revoked under the power.

The statute of this State makes the property held in trust liable for the debts of the beneficiary, and this court has often so decided; but this record presents no such case. The beneficiary is not the debtor of these appellants, but holds under a conveyance from the debtor

that vests in her the beneficial interest, subject to the power of revocation. The statute, we think, has no application to this character of case, and the argument that the reservation of power nullifies the conveyance is answered by the opinion of the Supreme Court in the case of Jones v. Clifton, reported in 101 U. S., 225. That case was a conveyance by the husband to the wife of certain realty, the deed containing a clause reserving to the grantor "the power to revoke the grant in whole or in part, and to transfer the property to any uses he might appoint and to such person or persons as he might designate, and to cause such uses to spring or shift as he might declare." The conveyance was made at a time when the husband was not involved, but subsequently became embarrassed and was adjudged a bankrupt. The assignee in bankruptcy contended that the deed passed no interest to the wife as against creditors, but was fraudulent as to future creditors, the husband retaining and controlling the use of the property, and further insisted that the power of revocation and appointment passed to the assignee for the benefit of creditors. The Supreme Court held, through Mr. Justice Field, that "the right of a husband to settle a portion of his property upon his wife and thus provide against the vicissitudes of fortune, when this can be done without impairing the existing claims of creditors, is indisputable." The court proceeded, also, to say "the powers of revocation and appointment to other uses, reserved to the husband in the deeds in question, do not impair their validity or their efficiency in transferring the estate to the wife, to be held by her until such revocation or appointment be made." It was also held, in the same case, that such a power was

not an interest in the property that could be transferred
to another, or sold under execution or devised by will,
or that passed to the assignee. Such is the doctrine on
the subject, and has been modified by our statute of wills
to the extent only that a devise of one's own estate,
who has a discretionary power of appointment, shall
operate as an execution of the power unless a contrary
intention shall appear by the will.

It is claimed that the grant to the daughter was re-
voked by a deed of revocation at one time prepared by
the father for that purpose and destroyed. The testimony
of the grantor shows that this writing was executed to
enable those who were engaged in the business of making
soap and candles to form a sort of trust, in which like
partnerships or companies could combine, with the title
to the factories owned by each invested in the one head;
that this contemplated movement failing, the revocation
was never carried into effect, either by notice to his
daughter or by any writing obligatory on either party,
and we are satisfied that no revocation was ever made.

The wife of Wm. Cornwall, Sr., with whom he had
not been living for years, asserted dower in the real
estate assigned, and in order to obtain her relinquishment
it was agreed, for a consideration expressed, that the
wife should relinquish dower in the estate assigned and
describing the factory as a part of the realty that had
been passed to the assignee.

The object of this deed was to release all right to
dower in the property assigned—nothing more. It was
not the purpose or intention of the grantor, in the midst
of his pecuniary embarrassments, to take from his daugh-
ter the estate he had given her and thereby involve her

in financial ruin. He did propose to creditors that he would revoke the grant if they would settle upon terms that had been submitted to them. His proposition was not accepted, and we find no evidence in the record justifying the conclusion that the power reserved by the grantor in the conveyance to his daughter had been executed, but on the contrary, the facts indicate a purpose not to deprive the daughter of the estate conveyed, except upon certain conditions, and the chancellor very properly refused to subject her estate to the demands of creditors. The chancellor also adjudged properly in refusing to allow rent to Mrs. Hill for her interest in the factory after the year 1885. The scarcity of financial means is assigned as the reason for failing to pay this rent, but this can be no response to the claim in the absence of other facts and circumstances bearing on the question.

The dominion exercised by the grantor over the property conveyed to his daughter, and his pecuniary necessities, doubtless induced him to withdraw his liberality toward the daughter, and she failed to assert any claim for the reason that her father had, not only prior to 1885, paid her the most of the rent, but prior to and after that time had advanced to her considerable sums of money—more than would have compensated her for the rent, and it is a fair inference, to be gathered from payments made for both the daughter and her husband, that no claim for rent was intended to be asserted; and it would be inequitable, under the circumstances, to compel her father to pay it, or take from his creditors any part of his or the assigned estate for that purpose.

On the appeal of Eleanor Cornwall from that part of

the judgment denying her claim for nine thousand dollars, the following facts are made to appear: She is the wife of Wm. Cornwall, Jr., and on the 21st of July, 1875, a relative, Miss Henrietta Ormsby, conveyed to her a vacant lot on Ormsby avenue. The lot was valuable, worth seven or eight thousand dollars. A dwelling was erected upon it by the husband in a short time and they occupied it as a home. The house was erected many years before the financial troubles of the firm. In the year 1890 this property was sold to Bonnie for seventeen thousand dollars, five thousand of which was paid in a check to the wife, and two notes executed to her for the balance. The husband took charge of the cash and doubtless used it. Shortly after this sale, the banks to which the firm of Cornwall & Bros. were indebted in large sums, began to press them for money. The notes of the purchaser had been paid, and the firm, through its members, at least Aaron Cornwall, obtained this money from the wife through the husband. The money was obtained and placed by the firm, through its book-keeper, to the credit of Wm. Cornwall, Jr., the husband. Aaron Cornwall, knowing how the money was obtained and to whom it belonged, placed opposite to the credit given his brother the words "His wife's money," and when they had obtained over seven thousand dollars of the wife's money a note was executed to her by the firm for that amount, and after this other sums were borrowed, increasing the amount loaned by the wife to nine thousand dollars. That the firm knew the money credited to Wm. Cornwall, Jr., was his wife's money, and that the husband used it for investment for the wife, is undoubted, and their obligation to secure it equally certain.

Aaron Cornwall, the member of the firm, knew it was the wife's money, and when used, evidences of its being hers were always connected with its use. The husband recognized it as the wife's money, and it was repaid her by the firm in this way: Wm. Cornwall, Sr., owned a house and lot on Main street and was desirous of securing Mrs. Cornwall and of raising other money to meet the urgent demands of creditors. They state that, upon consultation, it was thought a mortgage upon the property would hasten what they were trying to avoid, viz.: an assignment of their property, and in order to relieve the creditors for the time being, Wm. Cornwall, Sr., sold to Wm. Cornwall, Jr., this house and lot on Main street for twenty-seven thousand dollars, executing a deed reciting a consideration of nine thousand dollars in hand paid, which was in satisfaction of the money due Mrs. Cornwall, and the notes for the balance belong to credititors or the assignee of Wm. Cornwall, Sr. Counsel were advised with in reference to securing the wife in this manner, and Wm. Cornwall, Sr., as well as the other members of the firm, consented to it, and the note for seven thousand dollars or more was left in the hands of Aaron Cornwall. It was a surrender by Wm. Cornwall, Sr., of his own estate to pay his son's wife, with the balance to be applied to the indebtedness of these assignors.

When the deed of assignment was made, the assignee was informed of the nature of the claim of Mrs. Cornwall. He paid off the bonds executed for the property by Wm. Cornwall, Jr., and the balance of the proceeds are in his hands for Mrs. Cornwall or those entitled. This is no stale claim asserted by the wife, nor is it affected by even a suspicion of unfairness or fraud; but with bankruptcy

impending over the firm, of which her husband was a
member—his individual estate wrecked as well as the
partnership—it is argued that the wife voluntarily sold
her house and placed the proceeds of the sale in her
husband's hands that all she had might be swallowed
up in the general financial crash.   Such a view of the
acts and conduct of the parties is not sustained by the
testimony, but on the contrary it is evident this money
was borrowed as the wife's money and invested by those
whose duty it was to invest it, in this Main street
property.

That the proceeds of the sale of the home of the wife
became her separate estate, and was so regarded, clearly
appears; and whether the wife was or not a competent
witness, or the husband for the wife, the testimony of
the other members of the firm shows the manner in which
the money was obtained, to whom it belonged, and its
being made secure in the conveyance of the Main street
property.   The note to the wife by the firm, the husband
being a member, must create a separate use in the wife,
otherwise it could have no effect in law or equity.
(Maraman v. Maraman, 4 Met., 89.)

That the conveyance was made to the husband, omit-
ting the wife's name, is not in the way of recovery.
That she was beneficially interested to the extent of the
money loaned the firm is evident, and in the effort to
secure her and invest her money, the fact that the deed
was made to the husband without her knowledge and in
the belief that it would secure her, preserves instead of
destroying the trust.   He held the property in trust for
the wife to the extent her money was invested in it.   No
creditor of the debtor and husband is wronged by pro-

tecting the wife in a case like this. They could have given no credit to the husband on the faith of the wife's estate, to which she had the legal title. He had not used her money for years in the conduct of his business, as is usual in such claims, and when a bankrupt, his wife asserts her claim under some latent equity that her money was to be held in trust or invested for her benefit, but on the eve of his bankruptcy and with a knowledge of his condition, the wife permits the loan of her money to the firm, of which he is a member, and takes from the firm a note evidencing the agreement to pay her and not the husband. The justice of the claim can not be questioned, and if equity will interpose for the protection of those laboring under the disability of coverture, and secure what a confiding wife has placed in the hands of her husband to be invested for her, no case could be presented presenting stronger facts for relief than the one before us. In our opinion the chancellor erred in refusing to allow the appellant, Mrs. Cornwall, the nine thousand dollars invested of her money in the house and lot conveyed by Cornwall, Sr., to his son, William, on the 31st of January, 1891.

On the appeal of the Merchants National Bank, a creditor of the firm of Cornwall & Brother, the question as to the right of the bank to make double proof arises— that is, its right to prove its debt not only against the firm of Cornwall & Brother, but also against the individual assets of William Cornwall, Sr., William Cornwall, Jr., and Aaron Cornwall, all three of whom constituted the firm of Cornwall & Brother. It is said, and this is true, that there was not a joint assignment of both partnership and individual property, but separate assignments, first,

by the partnership, and then separate assignments by each
member, of his individual estate, and the question asked
is, who are the *cestui que trusts* in these several deeds, and
the answer must be that all the creditors are the bene-
ficiaries in each deed.  But the question again arises, how
are the assets from each assignment to be distributed be-
tween partnership and individual creditors.    We can per-
ceive no distinction between a joint assignment where the
firm assets and the individual assets are assigned, and
the case where each makes a separate assignment.    The
equitable rule is the same, and must be applied in the
same way.    It is conceded that at law firm creditors have
no lien upon the firm assets, and no contract right by
which an individual creditor must stand aside until the
partnership creditor is satisfied, but a court of equity
gives to the firm creditors a lien through the partners,
who have the right to demand the payment of firm debts
before the partnership property can be applied to the
individual debt of one of the partners, and this rule
of equity giving the creditor of the firm priority over the
individual creditor as to the firm assets, was so extended
by this court in the case of the Northern Bank of Ken-
tucky v. Keizer, 2 Duv., 169, as to compel the creditor who
elects to accept the benefit of this equitable rule, to remain
there until the individual creditor out of the individual
assets is made equal with him.    Counsel for the Bank have
cited many authorities in other States, including those from
the Federal Judiciary, establishing a different doctrine, and
present with much force a line of reasoning sustaining
their view of this equitable doctrine.    The rule in the case
of the Northern Bank v. Keizer has been followed or recog-
nized in this State in several reported cases, viz., Whitehead

v. Chadwell, 2 Duv., 432; Spratt's Ex'rs v. First National Bank, 84 Ky., 85, and Fayette National Bank v. Kenney's Assignee, 79 Ky., 133. It was not intended in the last named case to depart from the doctrine as settled in the Northern Bank v. Keizer, and for the reason that if an equity is created or flows from a rule of right, that gives one set of creditors priority in the payment of debts out of one class of assets, those who are required to look for payment to another and different class of assets should at least be made equal before those electing to take this priority should share in the general distribution.

A joint and several liability may afford an equitable reason for giving a lien or rather priority to the partnership creditor in the distribution of the partnership assets, but he may elect not to assert this claim, but share with the individual creditor in the distribution of the entire assets, and to give the firm creditor priority in the first place, and then allow him to share with the individual creditor in the distribution of the individual assets is neither equitable nor just. The firm creditor in fact credits the firm, and while each member is individually liable also, the creditor is not allowed his priority because he has taken the precaution to have all the firm bound, but for the reason the partners have the right to have the firm assets applied to the payment of the partnership debts. The equity of the creditor comes in this way, and equity must come to the relief of those who are required to look on until the firm creditor has been paid. We adhere to the rule as settled by this court, however high the authority elsewhere.

The defense of usury was set up by Mrs. Hill. who had

asserted her claim for rent, against the bank, and it is con-
tended that she was not a creditor and could not therefore
make such a defense, and if a creditor, that the plea of
usury is not good.    The law to be applied to this bank is
that found in the National Bank Act, under which this
bank was organized.    Many of the notes executed by this
firm to the bank had gone into the hands of third parties
and been paid; other notes have been discounted by other
banks, and long intervals between renewals, so that it is
impossible to reach a correct conclusion as to what usury
was paid, and when paid.    It is sufficient to say that the
court below has conformed to the banking law, and the
usury deducted is not for a larger sum than was proper ;
and if the pleadings are bad, it appearing from the record
that there is usury, the case would be sent back with leave
to amend, but as the chancellor has deprived the appel-
lant of interest to the extent authorized, we are not dis-
posed to reverse the case on account of any defect in the
pleading.

A question of usury also arises in the appeal of the
Bank of Louisville, and this must be decided under the
usury laws of this State, and looking to the various decis-
ions, we think the bank has no cause of complaint.    It is
insisted that Mrs. Hill, as in the case of the Merchants
National Bank, had no right to make the plea of usury.
She had set up a claim against the firm of Cornwall &
Brother for rent, and by the judgment below, and now
affirmed by this court, it has been held she was not enti-
tled to recover.    Still it appears from the record that
usurious interest had been charged by the bank—that
usurious interest had been ascertained, and in this contro-
versy between creditors, where the assets are insuf-

ficient to pay the debts, the chancellor should take notice, although no plea is entered, of the usury sought to be recovered, and reject the claim to that extent. In fact, in any case where it is plain from the record that the party is seeking to recover usury the chancellor should refuse to give judgment for the usury.

The case of Smith v. Young, &c., 11 Bush, 393, has, in effect, been overruled in more than one reported case, and in several MS. opinions. A payment made at the date of the renewal, although regarded as a payment of the usury and the note renewed for the principal, will be regarded as a payment on the principal, and although the note may be in the renewal signed by others than those originally bound, if the original obligor is still bound all usury will be purged from the transaction so long as he remains liable. Hart, &c., v. Hayden, &c., 79 Ky., 346; Rudd v. Planters' Bank, 78 Ky.; Fitzpatrick v. Apperson's Ex'or, 79 Ky., 272. The chancellor, therefore, properly refused to render any judgment for the usury, when, from the record, it was made to appear that the bank was seeking to recover it. The contract, as to the usury, is void and can not be enforced. Lucking's Adm'r v. Gegg, 12 Bush, 300.

It is claimed by the bank that the assignee mismanaged and wasted the assets, and should be held responsible. It seems that a meeting of the creditors (excluding the appellant), with an advisory committee at their head, authorized the continued operation of the factory to prevent the loss of assets, and to work up the material then on hand. It was supposed that a factory in full operation would be more likely to be sought after than one that had been abandoned, and to preserve the business of this factory and add to its value it was the part of wisdom to

operate it, although there may have been a loss sustained. We see nothing in the record that would authorize the chancellor to condemn the judgment of the assignee, when it is manifest that all parties acted in the best of faith, and with a view to advance the interest of creditors. The raw material on hand had to be manufactured—this valuable plant, with its trade-mark and business known in all parts of the country, had to be preserved—depreciation in value was what the assignee and the creditors desired to avoid, and the plan adopted was wise in its inception, and the exercise of the judgment of the assignee and nearly every creditor. There is nothing to complain of on account of the assignee's action in the premises. Nor is there any ground of complaint by reason of the allowance to the assignee. The entire assets were of the value, as is stated, of $200,000, all of which passed through the hands of the assignee. As to the fees of counsel the case comes to this court with proof sustaining the claim. There was a continuous service for two years with questions arising of the greatest importance to the assignee and the creditors. The fee is eight thousand dollars, and while the sum may appear large, we can not assume from the record that it is unreasonable. The chancellor approved the allowance, and is fully sustained by the testimony, without any conflicting proof.

There remains another question, left undecided when the original opinion was delivered, in regard to the judgment of sale of Mrs. Hill's interest in the factory. The court, in reading the record, considered the question as pertaining to property involved in another case in which Cornwall's assignee was interested, and in this was mistaken.

Mrs. Hill claims that she was the joint owner of the

*factory proper*, and in this she is sustained by this court; but she further insists that the chancellor had no power to order a sale of her interest at the suggestion of a creditor who has alleged that the property was indivisible, and being a vested interest in possession should be sold as a whole as authorized by section 490, Civil Code. The right to sell the whole property in case of a joint holding, under section 490 of the Code, may be asserted by one of the joint owners against the others, and with the case made out as provided by that section, a court of equity will order the sale. The right to sell in such a case is purely statutory, and the statute must be followed, and, although a creditor of the insolvent assignor has a beneficial interest, the chancellor's jurisdiction is confined to cases where one joint owner sues another joint owner, and no individual or firm creditor can step into the shoes of the assignee and, because he may have a beneficial interest, large or small, assert the right to have the entire property sold. Cases might occur where the assignee, from the charges in a petition, and proof to that effect, is wasting the estate and subjecting the property to sale at a sacrifice for the interest of one joint tenant, that a court of equity would interfere; but we have no such case here, and if any creditor can sue at pleasure, regardless of the assignee who has the legal title, it not only produces confusion, but opens the door to this statutory relief for all parties interested in the estate. The assignee in this case brought no action of this character, and while it may appear that a sacrifice of the property would result if not sold as a whole, it affords no reason for entertaining a jurisdiction unknown to the common law and not conferred by statute. The assignee may be clothed with the

mere legal title for creditors, still he is the party to sue,
and if otherwise, contests would soon arise between the
assignee and creditors, and every one interested asserting
his right under this provision of the Code.

The judgment is therefore reversed as. to Mrs. Eleanor
Cornwall, with directions to enter a judgment for her for
the amount indicated, and also reversed in so far as it
directs the sale of Mrs. Hill's interest in the factory, and
must stand approved in every other respect.    This is not
intended to preclude the assignee from asking the relief
sought by the creditors as against Mrs. Hill.