CASE 94—ACCOUNTING BY J. S. COOPER AS SUBSTITUTED ASSIGNEE OF HOUSTON & ADAMS.—JAN. 29.

# Cooper v. Lankford, &c.

APPEAL FROM PULASKI CIRCUIT COURT.

FROM THE JUDGMENT COOPER APPEALS. MODIFIED.

ASSIGNMENTS FOR BENEFIT OF CREDITORS—CONTINUANCE OF BUSINESS —RIGHTS OF ASSIGNEE—LOSSES—ACCOUNTING—CHARGES.

Held: 1. Where an assignee for the benefit of creditors over their protest elected to continue the assignor's business, which was manifestly unprofitable, and in consequence lost to the creditors the cash, and manufactured assets equal to cash, which he received on taking charge of the estate, he was properly charged with the amount so lost.

2. Where an assignee for the benefit of creditors of a firm engaged in logging elected to continue the business, it was improper to charge him in his account for logs belonging to the assignor which came into his hands, which were so small and defective as to be valueless for manufacture.

O. H. WADDLE, FOR APPELLANT.

VIRGIL P. SMITH AND W. A. MORROW, FOR APPELLEES.
    (No briefs, record misplaced.)

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

On the 12th day of February, 1900, C. E. Houston and J. H. Adams, of Somerset, Ky., doing business as Houston & Adams, contracted to sell and deliver to the T. B. Stone Lumber Company, of Cincinnati, Ohio, about 250,000 feet of poplar, oak, and chestnut lumber, which was to be manufactured from trees upon a tract of about 50 acres of land which they had purchased from George Gastineau. The lum-

Cooper v. Lankford, &c.

ber company advanced $300 on the contract, under an agree-
ment that it was to be repaid to them out of the lumber
as delivered. In compliance with this contract, Houston &
Adams had a large number of trees cut down, sawed into
logs, and hauled to the sawmill of G. R. Gilleland & Co.,
with whom they had contracted to manufacture them into
lumber at the price of $3 per thousand feet. A sufficient
number of the logs were manufactured under this contract,
and the lumber delivered to Stone & Co., to repay them the
$300 advanced, and leave a balance of $142.80 due from
them to Houston & Adams. On the 21st day of June, 1900,
Houston & Adams found that they could not successfully
carry out their contract, and they made a general assign-
ment of all their property to W. F. Rainey for the benefit
of all their creditors equally. This deed of assignment au-
thorized the assignee to carry out their contract with Stone
& Co. Rainey, however, failed to qualify, and the appel-
lant, J. S. Cooper, was appointed in his place. There came
into his hands as assignee $142.80 in money, which was
collected by him from the Stone Lumber Company, and
about 20,000 feet of manufactured lumber, which was ricked
on the millyard, the value of which is not clearly disclosed
by the testimony, but was probably worth $200; also a
number of logs, some of which were on the millyard, and
some lying in the forest, and some trees still standing. After
Cooper's qualification as assignee, Gilleland & Co., claimed
that a balance was due to them by Houston & Adams, and
that they had a lien on the lumber ricked in their yard to
secure them. Cooper seems to have held several conferences
with some of the local creditors as to what course he should
pursue. Some of them insisted that he should at once sell
all of the assigned property to the best advantage, and dis-

tribute the cash among the creditors. One of them testifies that he offered $600 in cash for the assets of the firm. This statement, however, is denied by Cooper, who testifies that he found that he could not sell the logs; that he paid to Gilleland & Co., $91.95 upon their bill, and entered into a new contract with them to saw the residue of the logs at $2.75 per thousand feet, and then proceeded to manufacture the logs into lumber, and to deliver it to Stone & Co., under the contract. The trustee having failed to make any report of his proceedings under the deed of assignment, a rule issued against him from the Pulaski county court at its July term, 1901, requiring him to do so. In compliance with this rule, he made a settlement of his accounts on the 18th of October, 1901, in which he accounted for $761.70, proceeds of the assigned estate, and was credited $767.91, paid out in the manufacture of the logs. In other words, the cost of manufacturing the logs had not only taken all the money received from the lumber, but had also consumed the cash and the proceeds of the manufactured lumber which came into his hands. On the 25th of February, 1902, appellees instituted this suit against appellant for a settlement, and asked that the case be referred to the master commissioner to hear proof of claims, and for a distribution of the funds in the hands of the assignee. In his answer, appellant set out the facts detailed above; claimed that he had no assets for distribution; that he had acted for what seemed to him to be the best interest of the estate in the course which he had taken; and denied liability. It was adjudged by the trial court from the evidence in the case that the assigned estate was of the value of $600 at the time appellant took charge of it, and he was credited with $91.95 paid to Gilleland & Co., and was adjudged to pay over the residue, $508, for distribution among the creditors.

The main question for decision upon the appeal is, can the assignee of an assigned estate, in his discretion, or pursuant to express authority conferred by the deed of assignment, continue the assignor's business? It will hardly be controverted that as a general rule, at common law, the effect of a general assignment by a debtor of his property for the benefit of his creditors is to put an end to his business as ordinarily conducted, as effectually as if the assignor were dead, and his property passed to his administrator by operation of law, or to his executor by force of his last will. It is the obvious duty of an assignee to proceed without unnecessary delay to convert the assigned estate into money, and to apply the proceeds to the payment of his debts. 4 Cyc. 236. Nor can there be any doubt that the assignor can not in a deed of assignment. authorize his assignee to continue and carry on the business, either for the benefit of the creditors or for his own benefit. If such provisions in deeds of assignment were tolerated and enforced by courts, it would put it in the power of an insolvent debtor to indefinitely postpone the collection of debts due by him, and at the same time subject his property to the risks of business, and place it in a position where it might be lost in attempting to carry on the business of his own motion.

In the case of Dunham v. Waterman, 17 N. Y., 9, 72 Am. Dec. 406, reversing 3 Duer, 166, Judge Selden makes use of the following language: "The true principle applicable to all such cases is that a debtor who makes a voluntary assignment for the benefit of his creditors may direct, in general terms, a sale of the property and collection of the dues assigned, and may also direct upon what debts and in what order the proceeds. shall be applied, but, beyond this, can prescribe no conditions whatever as to the management

or disposition of the assigned property. In all other respects the assignee must be left to act under the ordinary rules and principles which apply to trustees in analogous cases." While this is a general rule, there are exceptional cases in which the assignee, with the consent of the creditors, may work up the stock on hand, and prepare it for the market, if it is manifest that it will be for the benefit of the assigned estate. The case of Hill v. Cornwall & Bro.'s Assignee, 95 Ky., 536, 26, 16 R., 97, 26 S. W., 540, belonged to this category. There the property assigned was a manufacturing establishment in full operation, with an established business in all parts of the country, and a considerable amount of material on hand to be manufactured. The creditors, with an advisory committee at their head, authorized the continued operation of the factory to work up the materials then on hand, because it was believed that the plant would sell better as a going concern. It was held that the assignee was justified in continuing the business for a short time, and that the creditors were estopped by their conduct from complaining of losses incurred in the operation of the business which was carried on at their suggestion. But the facts in this case do not bring it within the rule of that or similar cases. Nor can it be doubted that the assignee of an estate could apply, under section 96 of the Kentucky Statutes of 1903, to the county court, for authority to continue the business temporarily, or the power of the court to authorize such continuance when it was manifest that it would be for the benefit of the creditors.

In this case the assignee, on his own judgment, against the protest of creditors, elected to continue what was manifestly an unprofitable business, and in consequence lost to the creditors of the assigned estate the cash, and manu-

factured lumber, equal to cash; and we think he should be charged therewith. But the testimony shows that the logs which came into the hands of the assignee were so small and defective as to be practically of no value, for the reason that the cost of manufacturing them into lumber was greater than the value of the lumber after they had been so converted. We therefore think that the assignee should not be charged with anything on this account, but only with the cash on hand, and the value of the manufactured lumber which came into his hands. The suggestion of appellant that appellees have not pursued the remedy pointed out by the statute, and appealed from the settlement made in the county court, is untenable, as they filed no exceptions to that settlement, and did not make themselves parties to the proceeding in any way. They were therefore not estopped from the institution of this suit in the circuit court, as provided by section 96 of the Kentucky Statutes of·1903. Pickerell v. Thompson, 22 R., 1382, 59 S. W., 751.

But for reasons indicated, the judgment is reversed, and cause remanded, with instructions to charge the assignee with $342.80, and credit him with such legal disbursements as he may show himself entitled to, including reasonable compensation, and for other proceedings consistent with this opinion.