## DEXTER et al. v. BEAVER DAM DEPOSIT BANK.

Court of Appeals of Kentucky.

Jan. 25, 1952.

Claude E. Smith, Owensboro, for appellants.

Woodward, Bartlett, Hobson & Catinna, Hartford, for appellee.

LATIMER, Justice.

On November 14, 1944, appellants by a petition in equity, sought to require appellee, Beaver Dam Deposit Bank, to purge of usury a $1,100 note and the renewals thereof which appellant, Otho Dexter, had allegedly executed and delivered to it on or about August 15, 1912. They further prayed that the court adjudge and decree that the indebtedness to the Bank, evi-

denced by the note, had been fully paid, liquidated and overpaid by reason of the usury collected and that the Bank be ordered to surrender the note for cancellation and that they recover the overpayments.

This suit was consolidated with a suit brought by the Bank against the plaintiffs in the first action and other parties on a collateral note which was originally pledged as security for the note given by appellant Dexter. The Bank prayed for the sum of $1,000, plus interest at 6% per annum from January 28, 1943, and that "its lien on the real estate hereinabove described be enforced and that said property be sold for said purpose."

The trial court dismissed the first cause and in the second action adjudged that the Bank was the owner of the collateral note and held, after purging the note of usury, that the plaintiffs (appellants) in the first styled action owed the sum of $416.95, together with interest at 6% per annum from January 29, 1943, the date of the last payment on the note; and further ordered a sale of the real estate, against which the collateral note constituted a lien.

Appellants in the first action alleged that on August 15, 1912, Dexter executed and delivered to the Bank his promissory note for $1,100, and, at the same time, pledged a collateral note for $1,000 as security. This collateral note, which was made in his favor and signed by Antha Dexter, Audrey Dexter, now Audrey Arbuckle, Annie Baker, Thomas Baker and himself, constituted a lien on certain real estate. It is further alleged that a few months later, Dexter paid a sufficient amount of the principal to reduce the sum to $1,000 and that he thereupon executed and delivered to the Bank a note for $1,000 in lieu of the original note. It was also alleged that Dexter paid interest in advance at the usurious rate of 8% per annum from August 15, 1912, until some time in the year 1931 and that thereafter Audrey Arbuckle paid the usurious rate of 8% for his benefit until December, 1942.

The Bank contends that in 1931 Dexter exchanged or traded the collateral note in full satisfaction of his note, and that, in-

sofar as it affects usurious payments prior to that date, the action is barred by the statute of limitations. The Bank introduced no proof to controvert the allegation that it had charged 8% interest per annum.

The first question which we must consider is whether there was a transfer of the collateral note in satisfaction of the original note or a renewal thereof. This question is necessarily one of fact.

It is the contention of the Bank that the original indebtedness was incurred on March 29, 1923, when Dexter executed a note for $1,000 and pledged the collateral note as security. However, there is nothing written on the collateral note to indicate a transfer, although the Bank after this date did credit all interest payments on the collateral note. A search of the Bank's records failed to reveal the execution of the original $1,100 note. There is no documentary evidence of the execution of this note. Dexter testified that he remembers the date of the execution of the note because it was about the time of his first marriage.

After considering the somewhat conflicting evidence, the trial court concluded that there was such a transfer, thereby creating a novation which set in operation the statute of limitations. KRS 413.140, in part, reads:

"(1) The following actions shall be commenced within one year after the cause of action accrued:

*   *   *   *   *   *

"(g) An action for the recovery of usury paid for the loan or forbearance of money or other thing, against the loaner or forbearer or assignee of either.

*   *   *   *   *   *

"(2) In respect to the action referred to in paragraph (g) of subsection (1) of this section, the cause of action shall be deemed to accrue at the time of payment. This limitation shall apply to all payments made on all demands, whether evidenced by writing or existing only in parol."

Appellants insist that even though such a transfer had been made, they would still be entitled to maintain their action since all usury may be purged from the

transaction so long as the original obligor remains bound. In support of that position appellants cite Rudd v. Planters' Bank of Kentucky, 78 Ky. 513; Hill v. Cornwall & Bro.'s Assignee, 95 Ky. 512, 26 S.W. 540; Brickley v. Standard Mortgage Co., 290 Ky. 125, 160 S.W.2d 633; Taulbee v. Hargis, 173 Ky. 433, 191 S.W. 320. We are not in disagreement with the principle that the taint of usury ordinarily attaches to all consecutive obligations growing out of the original usurious transaction and affects all subsequent renewals of the original obligation. We direct attention to the basis of those decisions, namely "an obligation given in renewal of a prior debt."

The Bank takes the position that the note sued on by it is not a renewal paper but a separate and distinct obligation, no longer held as collateral advantage.

Generally, if value has been given, unless the transfer is merely a cloak for a usurious loan, bills and notes, like other property, may be bought and sold on such terms as may be agreed upon. Desperation to obtain temporary relief from financial embarrassment coupled with anxiety to lend has resulted in a variety of devices to evade usury laws. Ordinarily no subterfuge will be permitted to conceal usury and an assignment or transfer will not be upheld if the purpose is to evade the statute against usury.

The general rule is that the right to attack a contract on the ground that it is tainted with usury is personal to the borrower or debtor, and can be asserted only by him and those in legal privity with him. 55 Am.Jur., Usury, § 121.

Here, the parties to the obligation sued upon by the Bank were not parties to the original obligation. Theirs was a separate and independent obligation. They sought in defense and obtained relief as to their usurious payments. The original obligor's payment of his note to the Bank in no way affected their obligation on their note. The original obligor could have satisfied his obligation by payment of cash or in the way the Bank contends he did, namely, assigning and transferring to it the note which had been held theretofore as collateral. There was no subterfuge in effectuating this transfer, since it appears there was no change in rate of interest on the new obligation. The Chancellor concluded that the transfer was made as contended by the Bank. The evidence supports him. We conclude that the Chancellor properly adjudicated the matter.

Judgment affirmed.