## Greenbaum, et al. v. Commonwealth by, et al.
## Same v. Same.

(Decided March 8, 1912.)

### Appeals from Woodford Circuit Court.

1. Constitutional Law—Personal Judgment Against Non-Resident for Taxes.—The Commonwealth, or a county thereof, has the power, upon the service of personal process, to impose a personal liability on a non-resident for taxes upon whiskey owned by or in the custody of such non-resident, and being within the State and county imposing the tax.

2. Same—Where the owner of a bonded warehouse located in this State, voluntarily reported to the proper State officer the number of barrels of whiskey stored in his warehouse, without protest, and having been personally served with process in a suit to collect the taxes upon said whiskey, he has had his day in court and has not been deprived of any of his constitutional rights.

3. Joint Owners of Real Estate—Sale of one Interest Therein.—Section 490 of the Civil Code of Practice authorizes a sale of real property jointly owned by two or more persons, in an action brought by either of them, if the estate be in possession, and the property cannot be divided without materially impairing its value, or the value of plaintiff's interest therein; but it does not provide for a sale of real property jointly owned by two or more persons at the instance of any creditor of one or more of them, or at the instance of any person holding a lien upon the interest of one of them. The right of sale under the statute is personal to the owner, and cannot be exercised by his creditor; the creditor's right is confined to a sale of his debtor's interest in the land.

FIELD McLEOD, WALTER P. LINCOLN and RICHARD GODSON for appellants.

W. J. JESSE and WALLACE & HARRISS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

These two actions were brought by the Commonwealth in its own behalf and by the Commonwealth for Woodford County, to recover State and county taxes for the years 1902 to 1908, inclusive, upon several thousand barrels of whisky stored in Greenbaum's warehouse in Woodford County, and for the enforcement of its statutory lien upon 26 acres of land upon which the distillery and warehouse is located for the purpose of paying said taxes.

The suit by the Commonwealth was here upon a former appeal, which is reported in 139 Ky., 138. The facts and the several sections of the statute governing the cases are there set out in detail, and need not be repeated here.

The warehouse and the whisky upon which the tax was levied were entirely destroyed by fire on August 5, 1908. The first defense of appellant is, that he was merely the collecting agent for the State and county, and that in view of the fact that he had been deprived of any opportunity for reimbursing himself by reason of the destruction of the whisky, he could not be held personally responsible for the tax thereon. Greenbaum further contended that he was not liable for the tax upon the whiskey belonging to others; that he was only liable for the tax upon his own whiskey. These defenses were, however, held insufficient upon the former appeal, and they need not be further considered.

Upon the return of the case appellant was permitted to file an amended answer, in which he alleged that he was, throughout the entire period for which this tax was levied, and is now, a non-resident of the State of Kentucky, and was and is a citizen of Chicago, Illinois, and for that reason the Commonwealth of Kentucky had no power to impose any personal liability upon him for the payment of these taxes; that the jurisdiction of the State extended alone over the property taxed, and that to hold him personally liable for said taxes would constitute a taking of his private property for public use, without just compensation being previously made therefor, and in violation of Section 13 of the Constitution of the Commonwealth of Kentucky, and of the Fourteenth Amendment to the Constitution of the United States, in that it would deprive the appellant of his property without due process of law, and would deny him the equal protection of the laws. The trial court sustained a demurrer to this answer; and, on February 27, 1911, appellant filed a second amended answer, in which he alleged that the reports required by the laws of Kentucky to be made to the State Auditor of Public Accounts, showing the kind and quantity of spirits in his custody as warehouseman, the location and value thereof, etc., were made by him, not voluntarily, but under compulsion, since a failure to make such reports constituted a crime under Section 4114 of the Kentucky

Statutes, and would subject any warehouseman so failing to a heavy fine, for the non-payment of which he would be imprisoned. The object of this pleading was to avoid the effect of the Commonwealth's claim that appellant had voluntarily submitted himself to the jurisdiction of the laws of Kentucky in thus aiding in bringing about the assessment of the whisky upon which the tax was subsequently levied. A demurrer was sustained to this second amended answer; and personal judgments having gone for the Commonwealth against Greenbaum for $4,065.62, and for Woodford County for $3,298.90, with a lien upon the 26 acres of land to secure the payment of these amounts, Greenbaum prosecutes these appeals. Mrs. Eva Block, who was a joint owner of said 26 acres of land, joins in the appeals from so much of the judgments as directs the sale of the entire tract of land, including her own interest therein.

1. Upon Greenbaum's appeal the only remaining question for decision is that presented by the amended answer filed after the return of the case, which questions the power of the Commonwealth or the county to impose a personal liability on a non-resident for taxes upon property owned by or in the custody of such non-resident, and lying within the county and State imposing the tax. These appeals raise no question of a personal service of the process upon Greenbaum, since he was so served with process while in the State of Kentucky. In other words, the answer does not raise the question of a lack of jurisdiction over his person in the court trying the case, but asserts a lack of jurisdiction in the taxing power to create or establish any personal liability as a basis for the judgment. It is elementary law that the power of the State as to the mode, form and extent of taxation is unlimited, where the subjects to which it applies are within the jurisdiction of the taxing power, unless it be restrained by the provisions of the Federal Constitution. As was well said by Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat, 318:

"It is obvious that it is an incident of sovereignty and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a State extends are subjects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation. This proposition may almost be pronounced self-evident."

Appellant relies chiefly upon the authority of Dewey v. Des Moines, 173 U. S., 193, and City of New York v. McLean, 170 N. Y., 374, in support of this defense. In the first case the City of Des Moines had made certain assessments for improvements upon Dewey's real estate located in that city, Dewey at the time being a citizen and resident of Illinois. Dewey filed a suit to set aside the assessment and enjoin the sale of his property; and the contractor holding the claim for the improvements made his answer a counterclaim, and recovered a personal judgment against Dewey for the amount of his debt. That judgment was affirmed by the Iowa Supreme Court; but upon appeal to the Supreme Court of the United States the judgment of the State court was reversed. In the course of its opinion the Supreme Court of the United States said:

"Thus a non-resident, simply because he was the owner of property on a street in a city in the State of Iowa, finds himself by the provisions of the State statute, and without the service of any process upon him, laid under a personal obligation to pay a tax assessed by the common council or by the board of public works and city engineer under the statute, upon his property abutting upon the street, for the purpose of paying the expenses incurred in paving the street, which expenses are greater than the benefits the lots have received by virtue of the improvement. The plaintiff, prior to the imposition of that assessment, had never submitted himself to the jurisdiction of the State of Iowa, and the only jurisdiction that State had in the assessment proceedings was over the real property belonging to him and abutting on the street to be improved.

"The principal which renders void a statute providing for the personal liability of a non-resident to pay a tax of this nature is the same which prevents a State from taking jurisdiction through its courts, by virtue of any statute, over a non-resident not served with process within the State, to enforce a mere personal liability, and where no property of the non-resident has been seized or brought under the control of the court. This principle has been frequently decided in this court. One of the leading cases is Pennoyer v. Neff, 95 U. S., 714 (24:565), and many other cases therein cited. Mexican Central Railway Company v. Pinkney, 149 U. S., 194, 209 (37:699, 705).

"The lot owner never voluntarily or otherwise ap-

peared in any of the proceedings leading up to the levying of the assessment. He gave no consent which amounted to an acknowledgment of the jurisdiction of the city or common council over his person.

"A judgment without personal service against a non-resident is only good so far as it affects the property which is taken or brought under the control of the court or other tribunal in an ordinary action to enforce a personal liability, and no jurisdiction is thereby acquired over the person of a non-resident further than respects the property so taken. This is as true in the case of an assessment against a non-resident, of such a nature as this one, as in the case of a more formal judgment."

In the City of New York v. McLean, the defendant McLean was a citizen and resident of New Jersey, and was sued by the City of New York to recover a tax levied by it upon certain bank stock owned by McLean in a New York City bank. Personal service of process in the suit was had upon McLean in New York, but the Supreme Court of New York held that the jurisdiction of the assessing power extended only to the property and not to the person of the defendant; that in the collection of its tax the city was required to look to the property, and that its jurisdiction to tax could not be enlarged by reason of a statute, which assumed to make a non-resident personally liable to pay the tax.

Appellee contends, however, that the foregoing authorities are not applicable to, and do not control the decision in these cases, since Greenbaum voluntarily appeared in the proceedings leading up to the assessment of the tax upon his whisky by making the reports to the State Auditor, and thus bringing himself within both the letter and the spirit of the decision in Dewey v. City of Des Moines, supra, in which stress was laid upon the fact that Dewey had given no consent which amounted to an acknowledgment of the jurisdiction of the city or the common council over his person.

Furthermore, Greenbaum never protested against the assessment of the tax upon this whisky, and by an order entered herein on May 26, 1909, he offered to confess judgment for $639.20, which he admitted was the tax due upon that portion of the whisky which he owned. Greenbaum seeks, however, to avoid the effect of these acts by seeming acquiescence and aid in making the assessment, by pleading that he was coerced into making his reports to the Auditor by the statute which sub-

jected him to a fine in case he refused to make the report; and in support of this last position he relies upon the authority of City of New York v. Mason & Magentheimer Confectionery Company, 119 N. Y. Supp., 472.

The cases now under consideration, however, are not to be controlled by the authority of those cases, since the facts here are materially different. Moreover, the two cases relied upon do not go to the extent claimed for them. In Dewey v. Des Moines, the opinion points out the essential and controlling fact, that, under the Iowa statute, an assessment upon lots for local improvement was in the nature of a judgment; and, that being true, it necessarily followed that Dewey's property had been taken and the personal judgment rendered against him by reason of the assessment alone. Dewey was not served with a personal summons except in connection with his attempt to remove the judgment in rem against his property; and clearly that effort could not be used to bind him differently.

But in the cases at bar it is not contended that the assessment of the whisky had the effect of a judgment. The personal judgment was rendered against Greenbaum only after a personal service of summons was had upon him. The proceeding is in the nature of a retrospective assessment by judicial proceedings, of which he has had ample notice to defend, and has defended. The statute makes it the duty of the owner of the warehouse to both report the whisky and to pay the tax to the proper officer, without further formal steps; and, in case of his failure to so pay, the collecting officer is authorized to proceed, as in these cases.

In the other case, City of New York v. McLean, the court rested its decision that McLean could not be taxed in New York, upon the ground that the New York statute applied to residents of that State only, and that it was not broad enough in its terms to embrace McLean, who was a resident of New Jersey. All that followed was dictum, and entirely beyond the necessities of the case.

Greenbaum not only obeyed the law without protest or complaint of any kind, but so far as this record shows, voluntarily and willingly appeared in the proceedings which led up to the levying of the assessment, thereby bringing himself clearly within the exception pointed out in Dewey v. City of Des Moines. The statute, by its terms, makes it the duty of Greenbaum to pay this

tax; and, having voluntarily appeared in the proceedings which led up to the levying of the assessment, and being personally before the court, we are of opinion that he has had his day in court, and has not been deprived of any of his constitutional rights. The owner having had an opportunity to oppose the assessment, in which he not only did not object but assisted in making, we see no valid reason for making a distinction as to a personal judgment between a resident and a non-resident owner. The cases relied upon by appellant rest upon the governing fact that a non-resident is not to be liable personally where he had not appeared, in any way, in the initial proceedings taken to levy the assessment. Being a non-resident, and presumably ignorant of the steps taken by the foreign state, he has not had his day in court, and his liability is therefore limited to his property there taxed; but where he takes part in the assessment, this presumption does not exist, and he stands in no better position than a resident.

2.   Greenbaum and Mrs. Block were the joint owners of the distillery property upon which the bonded warehouse was located; and the court being of opinion that the property could not be divided without materially impairing its value, directed a sale of the entire tract of land, including Mrs. Block's half interest, and an appropriation of Greenbaum's one-half of the proceeds to the satisfaction of the judgment; the other half to go to Mrs. Block. In entering this judgment we are of the opinion that the Circuit Court was in error. Section 490 of the Civil Code of Practice authorizes a sale of real property jointly owned by two or more persons, in an action brought by either of them, if the estate be in possession and the property can not be divided without materially impairing its value, or the value of the plaintiff's interest therein. But it does not provide for a sale of real property jointly owned by two or more persons at the instance of any creditor of one or more of them, or at the instance of any person holding a lien upon the interest of one of them. The right of sale under the statute is personal to the owner, and can not be exercised by his creditor. The creditor's right is confined to a sale of his debtor's interest in the land. This question was presented and decided in Hill v. Cornwall's Assignee, 95 Ky., 538, where the property was jointly owned by Mrs. Hill and her brothers; and it being necessary to sell the interest of the brothers to pay their debts, the

Circuit Court ordered a sale of the entire estate, including Mrs. Hill's undivided interest, as was done in the cases at bar. In reversing that action this court said:

"The right to sell the whole property in case of a joint holding, under Section 490 of the Code, may be asserted by one of the joint owners against the others and with the case made out as provided by that section, a court of equity will order the sale. The right to sell in such a case is purely statutory, and the statute must be followed, and, although a creditor of the insolvent assignor has a beneficial interest, the chancellor's jurisdiction is confined to cases where one joint owner sues another joint owner, and no individual or firm creditor can step into the shoes of the assignee and, because he may have a beneficial interest, large or small, assert the right to have the entire property sold."

For this error in selling Mrs. Block's interest in the land, the judgment of sale is reversed, with instructions to set it aside, and to enter a judgment confining the sale to Greenbaum's interest in the land.