[No. 3372.   June 5, 1930.]

[Rehearing Denied June 30, 1930.]

STATE v. BAKER.

[289 Pac. 801.]

J. Frank Curns and J. W. Chapman, both of Santa Fe, for the State.

Easterwood & Thompson, of Clayton, for appellee.

OPINION OF THE COURT

SIMMS, J.

In the year 1919, Baker, a citizen and resident of Colorado, owned certain cattle and other personal property located in Union county, N. M.  He personally returned a list of the same for taxation to himself and the assessment was duly made and the tax levied.  Having failed to pay, Baker was sued by the state for a personal judgment and was served with process within this jurisdiction. He answered and claimed that no personal liability was

or could be put upon him for this tax by reason of his being a nonresident, and asserted that to enforce such a liability against him would be a denial of due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. The trial court ruled with him, and the state appealed.

By the law of this state in force when the assessment was made and the tax levied, the cattle, being present in Union county, were assessable to the owner, and it was made the duty of "every person, subject to taxation" to call upon the county treasurer and pay the tax without the necessity of demand. Section 5483, Code 1915. By section 5509, Code 1915, suit and personal judgment were authorized in event of nonpayment, and the law contains no exception in favor of a nonresident owner of taxable property. We have held that there was no lien for taxes on personal property under the law which existed at the time (State ex rel. Hall v. Ballow, 26 N. M. 616, 195 P. 797), and it is apparent from the record that the cattle were sold by appellee before the assessment roll could have reached the treasurer in the summer of 1919. There was no effort to distrain. The statute provides full and ample machinery for the taxpayer to register any objection or protest against the amount of the assessment, rate, or any other matter or thing touching the justness or validity of the tax. Appellee made no objection to the proceedings in any stage, nor does he now question the legality of the tax except in so far as the same is sought to be enforced against him by a personal judgment.

The tax is upon the owner of personalty because of his ownership. It is made his duty to pay it. Can a nonresident owner place his property here and enjoy the protection of our laws and, after returning it for taxation to himself and failing to question in any manner the assessment and levy, then deny personal liability on the ground that he is denied due process of law? We hold that he cannot.

Questions of general taxation are vital to the life of the state. The courts are not inclined to be overly nice or technical in definitions or distinctions in such matters where the fundamentals of due process are observed. We

do not doubt that the power of the state to impose a tax upon persons or property is confined to its own territory, nor do we find it necessary to speculate as to what the state's remedy might be if the appellee could not be found and served here. We think that when he placed his property here and subjected it to taxation and returned it in accordance with law, he is a "person subject to taxation" in this state and, when found here, can be forced to discharge the same duty and obligation as a resident. Unless a nonresident is entitled to greater privileges and immunities than a resident, we do not see how the conclusion is escapable.

We find no direct pronouncement of the Supreme Court of the United States on the point. Appellee claims that Dewey v. Des Moines, 173 U. S. 193, 19 S. Ct. 379, 43 L. Ed. 665, settles the matter in his favor. But the court which rendered that decision said of that case:

"What was ruled there was that a citizen of one state cannot be cast in a personal judgment in another state on an assessment levied there on real estate for a local improvement, without service on him, or voluntary appearance, or some action on his part amounting to consent to the jurisdiction."

Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 591, 44 L. Ed. 701. And in the Bristol Case, supra, the court affirmed the power of the state of Minnesota to enforce against the estate of a deceased nonresident a claim for taxes, which had been assessed against the nonresident in her lifetime on her property in Minnesota, and said:

"There was no want of due process in all this, for while the nonresident came under the obligation to pay, appropriate notice and opportunity to contest were afforded. And if a personal action were brought and service obtained, the defendant would not be cut off from any competent defense, as the delinquent list would not necessarily be held conclusive. In this case no defense on the merits appears to have been relied on except the want of situs."

Counsel have cited many cases from the various jurisdictions, all of which we have examined, and we find that Greenbaum v. Commonwealth, 147 Ky. 450, 144 S. W. 45, Ann. Cas. 1913D, 338, and pertinent observations of the Supreme Judicial Court of Massachusetts in Collector of Taxes of Boston v. Rising Sun Street Lighting Co., 229 Mass. 494, 118 N. E. 871, support the view which we

have taken. Of the cases contra, New York v. McLean, 170 N. Y. 374, 63 N. E. 380, involved a question of the lack of statutory authority to sue a nonresident in personam, and the discussion of other matters in the opinion was outside the scope of the question. Other cases cited either proceed upon what we believe to be a misapprehension of the ruling in Dewey v. Des Moines, turn upon local statutes different from our own, or announce a rule which we are not willing to follow.

Appellee next contends that under the facts disclosed by the testimony, the state is now estopped to collect the taxes in question. He says that Baker sold the cattle, after assessing them to himself, in the spring of 1919 to Anchor & Snyder, who, in 1921, went into receivership; that the court ordered the receiver to pay the taxes on the trust property, and Baker bought the cattle and ranches from the receiver, thinking and understanding, as did the receiver, that all taxes were paid. In fact, the receiver and counsel for the parties say that they asked the treasurer for the taxes on the Anchor & Snyder property and, having received the list, relied upon and paid it. No one testified that the treasurer was asked about the Baker taxes for 1919. They were assessed against Baker. He knew or ought to have known that fact. If he sought to protect himself against this liability and failed in his efforts, the state is not to blame, nor is it estopped under such circumstances, without reference to whether it could be estopped as a matter of law, if the treasurer had in fact made a mistake. We do not find a discussion of the latter question necessary.

We come to the same conclusion with reference to appellee's contention that an offer to pay taxes is equivalent to payment. There was no offer to pay the Baker taxes. This fact renders it unnecessary to discuss the cases cited by appellee on this point nor to express an opinion upon it.

Appellee's final contention is that he should not under the circumstances be held liable for interest and penalties. The trial court has made no ruling on that phase of the matter and it is not before us. We assume that it will correctly apply the law in that regard when the question is reached.

It follows that the judgment of the lower court should be reversed, and the cause should be remanded with directions to proceed in conformity with this opinion, and it is so ordered.

BICKLEY, C. J., and WATSON, J., concur.

PARKER and CATRON, JJ., did not participate.