## Whitney et al. v. Dorsey et al.

(Decided May 25, 1937.)

W. D. GILLIAM, A. J. OLIVER and TERRY L. HATCHETT for appellants.

HARPER & GOAD for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

John D. Calvert, a resident of Allen county, died testate in 1920. At the time of his death, he owned a

farm of over 400 acres in that county. It has been adjudged in this action that under the will, Martha E. Calvert, his widow, took a life estate in the entire farm with remainder in fee to his four youngest children, namely, David R. Calvert, Joe B. Calvert, Lattie J. Whitney, and Rosie C. Reneau. Some controversy was made in the pleading concerning the extent and character of the estate taken by the widow under the will, but, it is practically conceded that the court properly construed the will, and without going into further detail or setting out its provisions, it is apparent that it is susceptible of no other construction.

In 1935, Martha E. Calvert and Rosie C. Reneau and husband instituted this action against Lattie J. Whitney and her husband, J. S. Whitney, and F. B. Ritter and J. C. Thomason. It is alleged in the petition that several years ago, David R. Calvert purchased the undivided one-fourth remainder interest of Joe B. Calvert in the farm and as a consideration assumed some indebtedness of the grantor to a bank and David R. Calvert thereupon executed a note to the bank covering some personal indebtedness and the note of Joe B. Calvert which he had assumed, secured by a mortgage on the one-half undivided remainder interest in the farm. The land was sold to satisfy this mortgage indebtedness and was purchased by Joe B. Calvert for a sum sufficient to satisfy the indebtedness. F. B. Ritter became the surety of Joe B. Calvert on the sale bond. Thereafter Joe B. Calvert sold his one-half undivided remainder interest in the land to Lattie J. and J. S. Whitney, and as a part of the consideration, the grantee assumed the payment of a mortgage indebtedness of $2,259 of the grantor thereon and a note for $730 held by F. B. Ritter against David R. Calvert with Martha E. Calvert and Lattie and J. S. Whitney as sureties, and also a note which Ritter held against Joe B. Calvert in the sum of $1,050 and which Martha E. Calvert, Lattie J. Whitney, and J. S. Whitney had signed as sureties; that Martha E. Calvert was also surety on the mortgage note of $2,259 and had executed a mortgage on her life estate in the land to secure all the notes assumed by Lattie J. Whitney and J. S. Whitney.

Ritter filed suit on the $2,259 mortgage note against Joe B. Calvert and Martha E. Calvert and recovered judgment against them for the enforcement of the mort-

gage lien on a one-half undivided interest in the land which Joe B. Calvert conveyed to the Whitneys and to enforce all the mortgage liens on the life estate of Martha E. Calvert. He also brought suit on the $730 note executed by David R. Calvert, Martha E. Calvert, and the Whitneys and the $1,050 note executed by Joe B. Calvert, Martha E. Calvert, and the Whitneys and obtained personal judgment thereon.

Thereafter Joe B. Calvert died, leaving a life insurance policy of $1,000, payable to his mother, and Ritter attached and caused $950 of the proceeds of the policy to be applied as a credit on these various judgments and later caused executions to issue on the judgment against Martha E. Calvert and J. S. and Lattie J. Whitney for the balance due on the judgment which were levied upon the life estate of Martha E. Calvert in the land, it being alleged that Ritter, who was a relative of testator's children, directed the sheriff not to levy on the interest of Lattie or J. S. Whitney.

In March, 1935, the Whitneys executed an additional mortgage to Ritter to secure all the indebtedness they had assumed in the conveyances from Joe B. Calvert covering the one-fourth undivided remainder interest which Mrs. Whitney took under the will of her father, in addition to the one-half undivided remainder interest which they purchased from Joe Calvert. Mrs. Reneau and her husband have executed a mortgage to James C. Thomason on her one-fourth undivided remainder interest in the land. Plaintiffs alleged that Mrs. Martha E. Calvert merely signed the notes above referred to as surety and received no part of the proceeds thereof and as between her and the Whitneys the latter owed the entire amount, and notwithstanding the knowledge of the Whitneys and Ritter of that fact, he was undertaking to subject her life estate to the payment of the indebtedness instead of enforcing his mortgage lien against the real debtors; that the plaintiffs and the defendant Whitneys were the sole owners of the real estate and in possession thereof and Martha E. Calvert joined the other plaintiffs in asking that the land be sold as a whole and she be paid out of the gross proceeds her interest in the real estate as a life tenant as computed under mortality tables at the age of 76 years; that on account of the mortgages referred to, the land could not be divided in kind without materially im-

pairing the value of each share and it was for the best interest of all parties concerned that the land be sold as a whole; that plaintiff was entitled to recover of the Whitneys the $950 as proceeds of the life insurance policy which had been attached and subjected to the payment of the judgment; and they prayed that the land be sold as a whole and out of the proceeds, Martha E. Calvert be paid the value of her life estate and that defendant Thomason's mortgage be paid out of the one-fourth interest of Rosie Reneau; that out of the three-fourths interest of the Whitneys, the balance due Ritter and the $950 due Martha E. Calvert as above set out be paid.

By answer, J. C. Thomason set up his mortgage lien in the sum of $400 against the one fourth undivided interest of Rosie Reneau and asked that his lien be enforced and for a sale of sufficient of such interests to satisfy his debt, interests, and costs.

By their joint and separate answers the Whitneys denied the material allegations of the petition and alleged that it was not contemplated in the transaction between Joe B. Calvert and J. S. Whitney that the Whitneys should assume the payment of the $730 note and that the only note upon which Martha Calvert was personally liable and which J. S. Whitney assumed was the $1,070 note and set up defenses against the claim of Martha E. Calvert to the $950 which it is unnecessary to enumerate. They asked that commissioners be appointed to divide the land described in the pleading as the interest of the parties might appear as well as other relief concerning the indebtedness.

By separate answer, F. B. Ritter set up all his mortgage indebtedness and asked for the enforcement of his mortgage lien against the undivided interest of the Whitneys and that he be adjudged a lien against the life estate of Martha E. Calvert and for the enforcement thereof.

After the proof was taken concerning the divisibility of the land and other matters in issue it was adjudged that Ritter had a mortgage on the three-fourths undivided remainder interest of the Whitneys and a mortgage on the one-half of Mrs. Calvert's life estate and claimed an execution lien on the other half; that in the deed from Joe B. Calvert to the Whitneys and

the mortgage executed by them, they assumed the entire indebtedness owed by Martha E. Calvert, David R. Calvert, and Joe B. Calvert, and themselves to Ritter; that Martha E. Calvert was not the principal in any of the indebtedness, but merely surety, and that she paid Ritter $950 of the lien indebtedness which the Whitneys assumed and that to that extent she be subrogated to all the rights of the original lienholder and had a lien on the interest conveyed by Joe B. Calvert to the Whitneys; that Rosie C. Reneau owned a one-fourth undivided remainder interest and that J. C. Thomason had a lien on same for the sum of $400 with interest from May 2, 1931; that Mrs. Calvert was seeking a sale of the land to enforce her lien and Ritter and Thomason were doing likewise and Rosie C. Reneau had joined in the suit for a sale and Mrs. Calvert had consented that the land be sold free from her life estate computed according to life tables; that the land be sold as a whole and the various lienholders entitled to the enforcement of their liens and the sale of the property; that the land could not be divided in kind without materially damaging the value and the value of each share and enough could not be sold off to pay the lien indebtedness without impairing the value thereof and the value of each share.

The master commissioner was directed to make a sale in conformity with the judgment and that all questions made in the pleading and not specifically adjudicated be reserved for future orders and adjudication. In a supplemental order of sale, the master commissioner was directed to sell the land in separate tracts and then sell it as a whole and accept the sale that would realize the most money. The land was sold as a whole and the commissioner filed his report showing that more was realized from selling in that way than the aggregate amount of the bids when offered in separate parcels.

Martha E. Calvert, Lattie J. Whitney and J. S. Whitney filed exceptions to the report of sale on a number of grounds which it is unnecessary to enumerate or to discuss except in connection with grounds relied on for reversal; and also moved the court to vacate and set aside the judgment and order or sale which was overruled. In the order overruling exceptions and report of sale, it was recited that Martha E. Calvert

had died and the sale could not be confirmed as to whatever interest she might have until the cause was revived as to her, but that the report of sale be confirmed as to all other parties. Lattie J. Whitney and J. S. Whitney are appealing.

The first ground argued and relied on for reversal is that the judgment and sale of the land had under it is void because the parties plaintiff were without capacity to maintain an action for sale of the land and division of the proceeds and appellants having resisted the sale, the court was without authority to enter the judgment.

As will be noted in the extended statement of facts, it was alleged in the petition in substance that plaintiffs and defendants were the joint owners of and in possession of a tract of land described in the petition, but the petition itself as well as other pleadings and evidence discloses that this was a misstatement or a miconception of the facts. Apparently appellees were trying to bring the allegations of their petition within the provisions of section 490 of the Civil Code of Practice which provides:

"A vested estate in real property jointly owned by two or more persons * * * may be sold by order of a court of equity in an action brought by either of them, though the plaintiff or defendant be of unsound mind or an infant.

"1. If the share of each owner be worth less than one hundred dollars.

"2. If the estate be in possession and the property cannot be divided without materially impairing its value, or the value of the plaintiff's interest therein."

Or in circumstances shown in subsections 3 and 4 of that section.

In Berry et al. v. Lewis et al., 118 Ky. 652, 82 S. W. 252, 253, 84 S. W. 526, 26 Ky. Law Rep. 530, 27 Ky. Law Rep. 109, it appears that Henry Lewis was the owner of a life estate in the land, during the life of Mrs. Margaret Berry, which was sought to be sold. The eight children of Mrs. Berry originally owned all the remainder interest in the land, but one had died, leaving infant children, and another had sold her interest to

Thomas Lewis. All of the remaindermen except Thomas Lewis resisted the sale. A sale of the property and distribution of the proceeds was decreed and the remaindermen who resisted the sale prosecuted an appeal. It was held that the judgment ordering the sale of the land was unwarranted and it was therefore reversed. In the opinion, after referring to subsection 2 of section 490 of the Civil Code of Practice it was said:

"It will be observed that in order to make a sale under this provision it is necessary that the estate should be in possession, and we have uniformly held that a remainder interest is not property in possession, within the meaning of this subsection. Swearingen v. Abbott and others, 99 Ky. 271, 35 S. W. 925 [18 Ky. Law Rep. 184]; Malone v. Conn, etc., 95 Ky. 93, 23 S. W. 677 [15 Ky. Law Rep. 421]; and Dineen v. Hall [112 Ky. 273] 65 S. W. 445, 66 S. W. 392, 23 Ky. Law Rep. 1615."

Later, by act of 1916, c. 119, subsection 3 was added to section 490 of the Civil Code of Practice; that subsection in effect authorized a sale if the estate had passed by devise or descent to the widow and heirs of the deceased and the widow had a life right in a portion thereof, either as a homestead or dower or by devise. The reason for and the purpose of the enactment of subsection 3 is pointed out in Piermann et al. v. Piermann's Guardian, 187 Ky. 392, 219 S. W. 156, 157, and respecting the effect of subsection 3, it was said:

"It will be observed that this amendment only extends the power to sell when the widow has a 'life right in a portion' of the property sought to be sold, and, confining the amendment to the purpose so plainly expressed, it is clear that it was not intended to authorize the sale when the widow had a life right or estate in the whole of the property sought to be sold. * * * But here the widow owns for life the whole of the estate; there is no joint ownership of any part of it during her life; the joint ownership only comes into effect when the estate vests in the children. * * * There being no statutory authority for a decree when the life estate in the whole of the property is held by one person, the infants or remaindermen only having a remainder estate, the lower court correctly ruled

that a sale could not be decreed under section 490, and the judgment must be affirmed."

Since the opinion in the Piermann Case was rendered, section 490 has been further amended by the addition of subsection 4 (Acts 1926, c. 26). But it will be noted that the section only authorized a sale "if the estate shall have passed by devise to one or more persons for life, with directions that at the termination of such life estate the property is to be sold and the proceeds distributed to remainderman or remaindermen in fee."

The will of John Calvert did not direct that his farm be sold at the termination of the life estate and the proceeds distributed to the remaindermen. Hence subsection 4 did not authorize a judgment for the sale of the land and division of the proceeds. See, also, Duke v. Allen, 198 Ky. 368, 248 S. W. 894; Wallen v. Nicely, 222 Ky. 825, 2 S. W. (2d) 648; Miracle v. Miracle, 260 Ky. 624, 86 S. W. (2d) 536, 102 A. L. R. 964. It is therefore apparent that section 490 of the Civil Code of Practice did not authorize a decree for the sale of the land.

It is further argued by counsel for appellants that if this be considered an action to enforce liens, the judgment is void because it adjudged a sale of the entire tract rather than a sale of the various interests to satisfy the various liens.

The statement of facts concerning the indebtedness of the parties is very complicated, but a study of them will reveal that Ritter had no lien against nor claim upon the undivided one-fourth remainder interest of Rosie Reneau; and Thomason asserted no claim or lien against the remainder interest of the Whitneys. So as between appellants and appellees, all liens asserted were separate and distinct and the liens against the interests of one did not affect the interests of the other. It is true that the life estate of Mrs. Calvert was in a way involved, but in the petition she and Mrs. Reneau alleged, as was found by the chancellor under the proof, that the Whitneys were primarily liable for all the indebtedness to Ritter which was assumed by them, including the $950 applied in the satisfaction of his judgment out of the proceeds of the life policy payable to Mrs. Calvert. It has been consistently held by this

court that a lien creditor of one joint tenant or holder cannot have a sale of the entire property, but can only subject and have a sale of his debtor's undivided interest in the property even though the property is indivisible. See Greenbaum v. Commonwealth, 147 Ky. 450, 144 S. W. 45, Ann. Cas. 1913D., 338; Towles' Adm'r v. Hart, 193 Ky. 91, 234 S. W. 965, and cases cited in those opinions which conclusively sustain appellant's contention. If, as indicated in the record, the life estate has terminated by the death of Mrs. Calvert, any of the joint owners may now maintain an action for partitioning the lands or for sale and division of the proceeds.

What we have already said renders discussion of the other grounds urged by reversal unnecessary.

Judgment reversed for proceedings in conformity with this opinion.